Ronald SEEGER, Petitioner,

v.

Dennis STRAUB, Respondent.

No. CIV. A. 97–74243–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 30, 1998.

Richard T. Taylor, Pontiac, MI, for petitioner.

Brad H. Beaver, Assistant Attorney General, Lansing, MI, for respondent.

### OPINION AND ORDER DISMISSING APPLICATION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

Petitioner Ronald Seeger, a state prisoner presently confined at the Cotton Correctional Facility in Jackson, Michigan, has filed this *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his guilty plea convictions for delivery of between 225 and 650 grams of cocaine and conspiracy to deliver between 225 and 650 grams of cocaine. Petitioner was sentenced to consecutive terms of 10–30 years imprisonment for those offenses. For the reasons stated below, Petitioner's request for habeas relief is denied and his application for a writ of habeas corpus is dismissed.

### I. *Factual Background*

Petitioner's arrest and convictions arise out of a controlled drug buy in which he

---

1. Staff Attorney Cheryl Takacs Bell provided quality research assistance.

agreed to sell an undercover police officer nine ounces of cocaine. Petitioner's defense to the charged offenses was entrapment. The trial court held an evidentiary hearing on the issue prior to trial, and ·thereafter concluded that Petitioner was not entrapped.

State Police Officer Richard Gilbert, who conducted the investigation of Petitioner, testified at the entrapment hearing that he met Petitioner through Tom Reno, a confidential undercover informant with whom he had been working. Reno introduced Gilbert to Petitioner as his cousin, Rick Reno. Gilbert testified that when he first met Petitioner they discussed a deal involving 10 ounces of cocaine. Petitioner was willing to obtain that amount for Gilbert, but wanted him to pay the money first. Negotiations continued, but the deal fell through when Petitioner spotted an undercover officer.

On May 12, 1989, Petitioner sold Gilbert a 'sample' ounce of cocaine, and offered him an additional two ounces, though Gilbert did not have the money to pay for it. A few days later, Petitioner beeped Gilbert and offered to sell him 15 ounces of cocaine for $19,000, which Gilbert declined as too expensive. Later the same day, Petitioner again beeped Gilbert and told him he could get 20 ounces for $20,000, which Gilbert again declined. On May 16, 1989, Petitioner told Gilbert he could get a kilo for $28,000, explaining that the price was high because his source charged $2,000 to 'ride the kilo,' but agreed to see if his source would forego the commission. Gilbert was prepared to complete the transaction at that point, but Petitioner called him and reported that his source had just sold 10 kilos and was out of cocaine.

Gilbert lost touch with Petitioner, and eventually closed his file on the matter. Nine months later, on February 6, 1990, Petitioner beeped Gilbert and offered to sell him cocaine. Gilbert told Petitioner he wanted a half kilo of cocaine, but they later agreed to negotiate for nine ounces of cocaine. Gilbert told Petitioner that he wanted the cocaine to be 100% pure. Gilbert and Petitioner were unable to close the deal that day and Petitioner went out of town. On February 8, 1990, Petitioner contacted Gilbert and notified him that he could give him nine ounces of pure cocaine for $13,250 the next day. The next morning, however, Petitioner telephoned Gilbert and said that the 100% pure cocaine was gone, but he could get nine ounces of 70% pure cocaine for $7,200. Gilbert agreed. Petitioner and his nephew, William Henson, delivered the cocaine later that day and were arrested at the scene. A chemical analysis subsequently revealed that the cocaine was 29% pure.

During his testimony, Gilbert denied discussing the purchase of three ounces of cocaine with Petitioner and denied asking him to cut the cocaine to escalate the offense. Gilbert also testified that, based on their conversations, he believed that Petitioner had dealt drugs on other occasions, but did not know whether Petitioner used drugs.

Petitioner also testified during the hearing. His testimony differed from Officer Gilbert's in several respects. Petitioner testified that he was addicted to drugs in 1989 and 1990 and used one-quarter to one-half ounce of cocaine each day. As a result of his drug habit, he was unable to maintain employment. He eventually entered a rehabilitation program, and, at the time of the hearing in November of 1991, had been in the program for more than one year.

Petitioner stated that he worked for Tom Reno and his father in the spring of 1989 for about four weeks. During that time, Tom Reno gave him drugs and sold drugs. Petitioner initially denied delivering drugs to Gilbert, but later admitted selling him an ounce of cocaine, explaining that he did it to cover a debt Reno owed. Petitioner denied offering to sell Gilbert an additional two ounces of cocaine at that time. Petitioner did not remember discussing deals involving 15 ounces, 20 ounces, or a kilo of cocaine with Gilbert, indicating that he forgot lots of things as an addict. Petitioner also stated that he would not have been able to obtain that much cocaine and would not have tried to sell it. Petitioner claimed that he avoided Reno's and Gilbert's frequent telephone calls and stated that Gilbert continued to call even after Petitioner told him that he was in rehabilitation.

Petitioner admitted that he contacted Reno in February, 1990 and stated that Reno offered to give him a job if he dealt drugs to Gilbert. Petitioner testified that he eventually agreed to the transaction because he need to obtain employment. Petitioner testified that Gilbert was the first person to whom he had sold more than an ounce of cocaine, that he obtained drugs only to feed his habit, and that he had a few sources. He admitted that his supplier for the deal with Gilbert was his nephew, William Henson, with whom he had done five or six drug deals in the past. According to Petitioner, he contacted Henson to obtain nine ounces of cocaine for Gilbert, but learned Henson only had three ounces. He then called Gilbert and told him that three ounces were available, but they could be diluted to nine ounces. Petitioner testified that Gilbert agreed, saying he had to make a sale in Flint. Petitioner also contradicted Gilbert's version of the negotiations leading up to the transaction.

Petitioner's father, Harry Seeger, also testified at the hearing. Mr. Seeger stated that his son suffered from a head injury, but admitted that his involvement in drug dealing did not seem to result from that impairment. Informant Tom Reno did not appear as a witness.

At the conclusion of the hearing, Petitioner claimed entrapment based upon escalation and based upon his assertion that Tom Reno, acting as an agent of the police, induced his actions by promising him a job in exchange for dealing drugs to Gilbert. The trial court, however, found that Petitioner was a drug user, was disposed to sell drugs, had previously sold an ounce of cocaine to Gilbert, had exhibited control over the drug operation, and had initiated the sale with Gilbert. The trial court determined that Gilbert had not attempted to escalate the offense. The trial court found no evidence to demonstrate that Tom Reno was an informant or an agent of the police so as to establish reprehensible conduct on the part of law enforcement officials. The trial court thus concluded that Petitioner had not been entrapped.

Petitioner subsequently pleaded guilty to the charged offenses, though defense counsel indicated that the entrapment ruling would be appealed. The trial court then sentenced Petitioner to two consecutive terms of 10–30 years imprisonment.

## II. *Procedural History*

Following his guilty pleas and sentencing, Petitioner appealed as of right to the Michigan Court of Appeals, raising the following two claims as grounds for relief:

I. The trial court's finding that there was no entrapment was clearly erroneous.

II. Defendant's sentences for possession with intent to deliver cocaine and conspiracy to deliver the same cocaine should run concurrently and not consecutively.

In an unpublished *per curiam* opinion, the Court of Appeals upheld the trial court's determination that Officer Gilbert did not entrap Petitioner, but ruled that the trial court erred in finding that Tom Reno was not an informant. The Court concluded that further fact-finding was necessary to determine whether Tom Reno acted inappropriately and remanded the entrapment issue to the trial court. As to the sentencing issue, the Court of Appeals ruled that consecutive sentencing "did not contravene the Legislature's intent under M.C.L. § 333.7401(3), did not violate double jeopardy protections, and was not cruel and unusual punishment." *People v. Seeger,* Mich.App. No. 191920 (September 13, 1994).

On remand, the trial court allowed the parties to submit additional material regarding Tom Reno's role in the undercover operation, but did not hold another evidentiary hearing. In an opinion and order dated October 2, 1995, the trial court concluded that *no entrapment occurred.* Specifically, the trial court found that while Tom Reno was an informant, he was not an agent of the police. The trial court did not credit Petitioner's testimony that he sold the cocaine to Trooper Gilbert in exchange for a job promised by Tom Reno. Petitioner thereafter filed a motion for reconsideration with the trial court, which the court denied on October 23, 1995.

Petitioner missed the deadline for filing an appeal as of right with the Michigan Court of

Appeals and instead filed an application for leave to appeal with that court, asserting, in pertinent part, that the "trial court clearly erred by determining that Tom Reno was not an agent in light of the stipulation by the parties to the contrary, and the trial court erred by failing to consider said stipulation in light of *People v. LaClear*, 196 Mich.App. 537, 494 N.W.2d 11 (1992), as ordered by this court." The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." *People v. Seeger*, Mich.App. No. 191920 (May 17, 1996).

Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court raising only the following issue: "The Court of Appeals clearly erred by not remanding the matter to the trial court and ordering an evidentiary hearing because on remand the trial court failed to consider a critical stipulation, did not conduct an evidentiary hearing, and did not analyze the facts of this case in light of *People v. LaClear*, 196 Mich.App. 537, 494 N.W.2d 11 (1992), as previously ordered by the Court of Appeals." The Supreme Court denied the delayed application for leave to appeal stating that it was "not persuaded that the question presented should be reviewed by this Court." *People v. Seeger*, 453 Mich. 923, 554 N.W.2d 912, Mich. S.Ct. No. 106505 (October 28, 1996). Petitioner filed the instant application for writ of habeas corpus on August 20, 1997.

## III. *Discussion*

Petitioner raises the following claims in support of his application for writ of habeas corpus:

I. The trial court's finding that there was no entrapment was clearly erroneous.

II. Defendant's sentences for possession with intent to deliver cocaine and conspiracy to deliver the same cocaine should run concurrently and not consecutively.

Respondent asserts that Petitioner's entrapment claim concerns a matter of state law which is not cognizable in a federal habeas action. Additionally, Respondent contends that Petitioner waived the entrapment issue by pleading guilty to the charged offenses. Respondent also asserts that Petitioner's sentencing claim is procedurally defaulted because he failed to timely present that claim to the Michigan Supreme Court. Respondent notes that Michigan Court Rule 7.302(C)(3) [2] now bars Petitioner from raising his sentencing claim in that court.

### A. *Standard of Review*

■ The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *Felker v. Turpin*, 518 U.S. 651, 654, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). The new standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1996). Simply stated, federal courts are bound by a state court's determination of a petitioner's claims unless that decision was contrary to or involved an

---

2. Michigan Court Rule 7.302(C)(3) provides that: A delayed application may be filed, if it is accompanied by an affidavit explaining the de-lay. However, a delayed application may not be filed more than 56 days after the Court of Appeals decision.

unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir.1998).[3]

### B. Entrapment Claim

■ The Court will first address Respondent's argument that Petitioner waived the entrapment issue by pleading guilty to the charged offenses. The record reveals that Petitioner raised the entrapment issue as a defense before the trial court. Following a hearing on the matter, the trial court dismissed the entrapment defense. Petitioner subsequently pleaded guilty to the offenses, though defense counsel indicated on the record that the entrapment ruling would be appealed. Petitioner thereafter filed an appeal as of right with the Michigan Court of Appeals raising the entrapment issue.

■ A properly-invoked guilty plea normally forecloses conviction challenges based upon antecedent non-jurisdictional errors. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Under Michigan law, however, a defendant only waives an entrapment claim if he or she fails to raise the issue before the trial court. *People v. Crall,* 444 Mich. 463, 464–65, 510 N.W.2d 182 (1993). A defendant does not waive an entrapment claim by pleading guilty if the issue has been raised in the trial court. *People v. White,* 411 Mich. 366, 401–02, 308 N.W.2d 128 (1981); *People v. LaClear,* 196 Mich.App. 537, 539, 494 N.W.2d 11 (1992), *rev'd. on other grounds,* 442 Mich. 867, 497 N.W.2d 490 (1993). Because Petitioner raised entrapment as a defense with the trial court prior to pleading guilty, he has not waived his entrapment claim. The Court will thus address the entrapment issue.

■ Petitioner contends that the state court's denial of his entrapment claim was clearly erroneous under Michigan law and violated his right to due process. To the extent that Petitioner's request for habeas relief is based upon an alleged error of state law, it must be denied. The United States Supreme Court has stated that it is "beyond the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Accordingly, this Court will not disturb the state court's determination that Petitioner was not entrapped as a matter of Michigan law.

■■ Entrapment is not a constitutional defense. *See Hampton v. United States,* 425 U.S. 484, 488–91, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion); *United States v. Russell,* 411 U.S. 423, 430, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Tucker,* 28 F.3d 1420, 1426–28 (6th Cir.1994), *cert. denied,* 514 U.S. 1049, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995). In *Russell,* the United State Supreme Court addressed the question of whether an undercover narcotics agent's contribution of an essential ingredient to the defendants for use in illegal drug manufacturing violated due process. In concluding that no due process violation occurred, the Court declined to constitutionalize the entrapment defense. 411 U.S. at 430–33, 93 S.Ct. 1637. In *dicta,* the Court noted that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431–32, 93 S.Ct. 1637. Subsequently, in *Hampton,* the Court again addressed the due process issue and found that no due process violation occurred where government agents, an informant, and the defendant acted in concert and the defendant conceded a predisposition to commit the crime. 425 U.S. at 489–90, 96 S.Ct. 1646. The Court left open the issue of whether a "due process" defense based upon law enforcement actions, rather than the defendant's predisposition, could be established under other factual circumstances.

More recently, in *Tucker,* the United States Court of Appeals for the Sixth Circuit refused to recognize a "due process" defense based upon a federal informant's conduct during a "reverse sting" operation which was

---

**3.** The United States Court of Appeals for the Sixth Circuit has not explained how courts should implement the new standard of review. *Harpster v. State of Ohio,* 128 F.3d at 326.

intended to catch people who had been illegally trafficking in food stamps. The defendants in that case moved to dismiss their indictments based upon the informant's alleged "outrageous" conduct, claiming a violation of their due process rights. The Sixth Circuit undertook an extensive analysis of federal case law and rejected the defendants' due process argument, concluding that the defense involved "nothing more than a claim of entrapment." 28 F.3d at 1421. *Tucker* thus precludes this Court from considering Petitioner's due process/entrapment claim on federal habeas review.

Moreover, even assuming that a "due process" claim based upon "outrageous" conduct of government officials is viable, this Court concludes that Petitioner has not established such a violation under the circumstances. Petitioner objects to the government's use and oversight of informant Tom Reno, who allegedly provided drugs to Petitioner and offered him employment in exchange for selling cocaine to Trooper Gilbert. Government infiltration and use of informants are well-established means of criminal investigation and frequently require that the government agent or informant furnish something of value to the suspected criminal. The fact that a government agent or informant may supply illegal drugs or provide other services does not necessarily constitute misconduct. *Hampton*, 425 U.S. at 489, 96 S.Ct. 1646. Additionally, in this case, the trial court concluded that although Tom Reno was an informant, he was not an agent of the police. The trial court also discredited Petitioner's testimony that he sold drugs in exchange for a job promised by Reno. The state court's findings are entitled to a presumption of correctness, and Petitioner has not met his burden of rebutting them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Accordingly, Petitioner's entrapment/due process claim lacks merit and must be denied.

### C. *Sentencing Claim and Procedural Default*

In addition to his entrapment claim, Petitioner challenges the trial court's imposition of consecutive sentences for his offenses. Respondent, however, contends that this claim is barred by the doctrine of procedural default because Petitioner failed to appeal his sentences to the Michigan Supreme Court.

■■■ A state prisoner's habeas corpus claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994). In *Coleman*, the Supreme Court held that if the decision of the last state court to which a habeas petitioner presented his federal claims fairly appeared to rest primarily on federal law, or to be interwoven with federal law, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition. *Id.* at 735, 111 S.Ct. 2546. The Court went on to note:

> This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims. [citation omitted]

*Id.* at 735 n. 1, 111 S.Ct. 2546. In *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), Justice O'Connor noted that "dismissing such petitions for failure to exhaust state court remedies would often result in a game of judicial ping-pong between the state and federal courts, as the state prisoner returned to state court only to have the state procedural bar invoked against him." *Id.* at 270, 109 S.Ct. 1038 (concurring opinion).

■■■ The record demonstrates that Petitioner did not seek review of his sentences on direct appeal to the Michigan Supreme Court. Petitioner is now barred from seek-

ing such review under Michigan Court Rule 7.302(C)(3), which imposes a 56–day time limit for filing delayed applications for leave to appeal with the Michigan Supreme Court. Thus, Petitioner has procedurally defaulted his sentencing claim.

 Absent cause and prejudice, a federal court may not reach the merits of a claim that has been procedurally defaulted in state court by a state prisoner in his direct criminal appeal. *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). The cause and prejudice test should be applied to all occasions where a procedural default bars state litigation of a constitutional claim. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Accordingly, Petitioner must demonstrate cause and prejudice for the procedural default for this Court to consider his sentencing claim as a basis for habeas relief.

 To establish cause, a petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); *Rust*, 17 F.3d at 161. Here, Petitioner makes no showing of cause for failing to seek leave to appeal to the Michigan Supreme Court with respect to his sentencing claim.

Nor can he demonstrate actual prejudice as a result of the claimed constitutional error. *See United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Rust*, 17 F.3d at 161. To the extent that Petitioner argues that consecutive sentencing is unauthorized under state law, he fails to state a cognizable federal habeas claim. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Petitioner also alleges that his convictions violate the Double Jeopardy Clause. In *United States v. Felix*, 503 U.S. 378, 390–91, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), however, the United States Supreme Court ruled that convicting a criminal defendant of both conspiracy and the underlying offense does not violate the Double Jeopardy Clause. Lastly, Petitioner asserts that the consecutive sentences violate the Eighth Amendment. This claim is similarly without merit. As the United States

Supreme Court has observed, successful challenges to the proportionality of particular sentences in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *see also Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (mandatory term of life imprisonment without possibility of parole for possession of more than 650 grams of cocaine does not constitute cruel and unusual punishment). In *United States v. Thomas*, 49 F.3d 253, 260–61 (6th Cir.1995), the Sixth Circuit stated that "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without the possibility of parole." Given this authority, it is clear that Petitioner cannot establish actual prejudice to excuse his procedural default.

 When a petitioner has defaulted his state remedies and has not demonstrated cause and prejudice, a federal court may entertain the habeas petition only if the petitioner makes a showing of actual innocence. *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner has made no such showing in the case at hand. His sentencing claim is thus barred by the doctrine of procedural default.

## IV. *Conclusion*

Accordingly, for the reasons stated, the Court **DENIES** Petitioner's request for habeas relief and **DISMISSES** his application for writ of habeas corpus.