**Albert Lee DREW, Petitioner,**

v.

**Arthur TESSMER, Respondent.**

**No. 99–CV–70505.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 15, 2001.

Albert Drew, Kinross Correctional Facility, Kincheloe, Pro se.

Joseph A. Puleo, Wayne County Prosecutor's Office, Detroit, Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, for Arthur Tessmer, respondents.

**Opinion and Order Adopting the Judgment of the Report and Recommendation and Denying Petition for Writ of Habeas Corpus [3–1][1]**

TARNOW, District Judge.

## I.  Introduction

Following a jury trial, Albert Drew was convicted of two counts of armed robbery and sentenced to concurrent terms of 50 – 70 years imprisonment.  After some limited success on appeal, Drew's conviction and sentence were upheld by the State court.  Drew then filed a petition for writ of habeas corpus with this Court.  A report and recommendation ("R & R") issued recommending the denial of the petition.  Drew filed timely objections to the R & R.

This Court adopts the judgment of the R & R but not the reasoning.  For the reasons stated below, Drew's petition for writ of habeas is DENIED.

## II.  Factual Background

Drew was accused of armed robbery along with an accomplice.  The two men, allegedly, falsely identified themselves as police, then forcibly took two men into an abandoned home to rob them of their coats.  Drew carried a knife, while his accomplice used a gun.  Then, Drew slashed each of the victims.  Drew and the other alleged perpetrator were caught nearby, less than 2 hours later.  When the police initially saw the two gentlemen, Drew's co-defendant was carrying the stolen property.  But he dropped the goods as the police approached.  The police discovered that Drew had a knife.

Drew was subsequently convicted of two counts of armed robbery and sentenced to concurrent terms of 50 to 75 years.  He filed an appeal as of right.  The case was remanded because the trial court failed to state the reasons for the upward departure on the record in accordance with *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990).  At the re-sentencing, the court affirmed the prior sentence, adopting the arguments of the prosecutor on the record.  Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court which was denied on November 1, 1994.  *People v. Drew*, 447 Mich. 1006, 526 N.W.2d 915 (1994)(Cavanagh and Levin would remand for resentencing before a different judge).  His motion for reconsideration was also denied.  *People v. Drew*, 528 N.W.2d 737 (Mich.1995)(Levin dissenting).  On February 26, 1997, Drew's motion for relief judgment was denied as well.  On April 14, 1997, Petitioner filed a delayed application for leave to appeal in the Michigan Court of appeals which also was denied on February 23, 1998.

On September 16, 1998, Drew attempted to file a delayed application for leave to

---

1.  Law Clerk Carlos Bermudez provided quali-    ty research assistance.

appeal to the Michigan Supreme Court. The clerk refused to file the application because petitioner had failed to file within the 56 day procedural deadline required by statute.[2] This refusal is Drew's third issue stated in his petition for habeas.

His habeas petition was filed on February 10, 1999. In it he raised the following three issues:

1. "Petitioner was denied due process of law and a fair and impartial sentence guaranteed under the 14th Amendment to the United States Constitution, where the trial court abused its discretion when it violated the principle of proportionality by sentencing defendant to a prison term three and a half times the highest minimum sentence as calculated by the sentencing guidelines without articulating on the record reasons for its departure."

2. "Petitioner was denied his right to a fair trial and due process of the law guaranteed under the 6th and 14th Amendments to the United States Constitution, where the jury was improperly instructed on reasonable doubt, leaving the presumption that defendant was convicted under an erroneous understanding of the law, depriving petitioner of substantial rights and resulting in a gross miscarriage of justice."

3. "Petitioner was denied his right to due process and equal protection for the law guaranteed under the 14th Amendment to the United States Constitution where a Michigan Supreme Court clerk refused to file or otherwise present tot he court, for the court's consideration, petitioner's delayed application for leave to appeal from the decision of the Michigan Court of appeals denying petitioner's appeal."

## III. Standard of Review

28 USC § 2254 governs the authority of federal courts to hear and determine applications for the writ of habeas corpus submitted by state prison inmates. This section was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Section 2254 now provides that a writ shall not be granted with respect to any claim unless: 1) it was a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or 2) it was a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## IV. Discussion

### A. Proportionality

Drew contends that the sentencing judge departed from the guidelines violating *People v. Milbourn,* 435 Mich. 630, 461 N.W.2d 1 (1990), by going beyond the guidelines without reason. Further, he argues that the sentence was so severe relative to the crime for which he was convicted that the federal principal of proportionality was offended. Finally, he argues that the court failed to articulate its reasons on the record for its departure from the guidelines.

■ The Respondent correctly argues that the *Milbourn* argument is an issue of state law not cognizable on habeas review. *Seeger v. Straub,* 29 F.Supp.2d 385, 392 (E.D.Mich.1998). Further, the reasons for departure were stated on the record. At the re-sentencing, the district court expressly noticed that he was required to

---

**2.** This Court is troubled by the extremely short deadline for filing application for leave to appeal to the Michigan Supreme Court. The propriety of such a short time to appeal

may be questionable, but given the length of delay in this case, over 180 days, the question does not arise.

state his reasons for departure in accordance with *Milbourn*. He then adopted the reasons given in the prosecutor's oral argument as the justification for the sentence. These reasons, thus, were reflected in the record.

■ In his R & R, the magistrate judge reasoned that Drew failed to state a claim as to the proportionality principle pursuant to *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The magistrate judge quoted *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), for the notion that *Weems* does not announce a constitutional proportionality guarantee. *Harmelin*, 501 U.S. at 992, 111 S.Ct. 2680.[3] A more careful analysis of *Harmelin*, however, indicates that there is, in fact, a requirement of proportionality. The support from *Harmelin* alluded to by the magistrate is located in Part III of Justice Scalia's opinion. Part III was only adopted by Scalia and Chief Justice Rehnquist. This critical section of Scalia's analysis concludes that there is no constitutional requirement of proportionality. This section carries little value, though, since the other seven Justices communicate that there is such a constitutional requirement.

In a concurring opinion and two separate dissents, the majority of the Supreme Court, in *Harmelin*, agreed that there is a proportionality requirement, although they disagree as to the appropriate test. In Justice Kennedy's concurrence,[4] he wrote that "*stare decisis* counsels our adherence to the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." *Harmelin*,

501 U.S. at 996, 111 S.Ct. 2680 (Kennedy, concurring). The Justice went further to state "The Eighth Amendment proportionality principle also applies to noncapital sentences." *Id.*

Although critical of Kennedy's dilution of the proportionality test, Justice White wrote a separate dissenting opinion,[5] agreeing that the Eighth Amendment contains a proportionality requirement that applies to capital and non-capital cases. The White dissent stated that "[n]ot only is it undeniable that our cases have construed the Eighth Amendment to embody a proportionality component, but it is also evident that none of the Court's cases suggest that such a construction is impermissible." *Harmelin*, 501 U.S. at 1013, 111 S.Ct. 2680. The opinion goes on to apply the three pronged proportionality test advanced in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

*Solem* identified three major factors to consider in assessing whether a punishment violates the Eighth Amendment: (1) "the gravity of the offense and the harshness of the penalty," 463 U.S., at 290–91, 103 S.Ct. 3001; (2) "the sentences imposed on other criminals in the same jurisdiction," *id.*, at 291, 103 S.Ct. 3001; and (3) "the sentences imposed for commission of the same crime in other jurisdictions," *id.*, at 291–92, 103 S.Ct. 3001. Despite the disagreement between the Kennedy concurrence and the White dissent as to which test applies, the two opinions represent the majority of the Supreme Court's view that there is a constitutional requirement of proportionality in sentencing.

---

**3.** The RR mis-cites the Harmelin quote: "it is hard to view *Weems* as announcing a constitutional proportionality requirement, given that it did not produce a decision implementing such a requirement, either in this court or the lower federal courts for six decades." This statement appears in part III of Scalia's opinion on page 992, not 958 as suggested in the R & R.

**4.** Joined by Justices O'Connor and Souter.

**5.** Justices Blackmun and Stevens joined the concurrence. Justice Marshall joined in this particular holding in a dissent.

■ Because *Harmelin* holds that there is an Eighth Amendment proportionality requirement, the R & R's treatment of the issue is inadequate. Drew's sentence of 50 to 75 years should be analyzed in order to gauge whether it is proportional to the conviction of two armed robberies. Even compared to *Solem*, however, the Court is unable to say that the sentence in this case is constitutionally disproportionate. The petitioner in *Solem* was sentenced to life in prison without the possibility of parole pursuant to a recidivist statute for issuing a no account check for $100. The Supreme Court found that this offended proportionality, in large part, because the crime was non-violent and the sentence imposed was the most severe possible. Considering the gravity of the offense and the harshness of the penalty, in this case, leads to a different result. Drew was convicted of a violent crime. Although, the injuries induced from him slashing the victims were not serious, the crime can still be considered violent. Further, he was sentenced to a term of years, which is no where near the severity of the sentence in *Solem*. Many cases have upheld harsher penalties for non-violent crimes. *See e.g., Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)(upholding a life sentence, under a recidivist statute, for fraudulent use of a credit card). Although the penalty in this case was harsh, it is constitutionally valid.

**B. Timeliness and Jury Instruction**

■ Due to some confusion on the part of Drew, his application to appeal a Michigan Appeals Court decision was submitted past the deadline for such appeals. The Michigan Supreme Court clerk refused to accept the pleadings. In response, Drew filed this petition for writ of habeas corpus, which included a claim regarding the adequacy of the jury instructions and a claim

as to the clerks' refusal to accept the delayed filing.

The respondent argued, and the magistrate found, that because Drew did not file in a timely manner with the Supreme Court, he has not satisfied the exhaustion requirement. The R & R stated that "*O'Sullivan v. Boerckel*, 526 U.S. 838, 839, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluded that a state prisoner must present his claim to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement." R & R at 9. The magistrate found that this amounted to a procedural default in accordance with *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). However, this Court holds that even if petitioner is not procedurally barred, there was no constitutional error.[6]

The only remaining claim would be whether the jury was given an improper definition of reasonable doubt. Drew argues that under *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the jury instruction defining "reasonable doubt" was prejudicial error. Respondent argues that it was not.

■ The Constitution neither prohibits, nor requires a trial court to define reasonable doubt, "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (citations omitted). A court reviews a challenged instruction to determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." The reasonable likelihood standard is to be applied in consideration of the instructions as a whole, not in artificial isolation. *See, Estelle v. McGuire*, 502

6. See footnote 2.

U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ The trial judge, in this case, gave a fairly extensive definition of "reasonable doubt." After stating that the defendant had to be proven guilty beyond a reasonable doubt, he explained:

> Now, let's talk about reasonable doubt. Again, I tell you that in a criminal case, in this case, as in all criminal cases, the People must prove the defendant guilty beyond a reasonable doubt. That does not mean beyond all doubt. It does not mean beyond a shadow of a doubt. We are talking about a reasonable doubt, a doubt founded in reason, a doubt for which you can give a reason for entertaining. It is a doubt which arises from the lack of evidence in the case or a doubt which arises from the unsatisfactory nature of the evidence, but it certainly is not any doubt based on a funny feeling in the pit of your stomach, nor any doubt based on sympathy or prejudice or bias.

> What I am telling you is the People do not have to remove all doubt from your minds. Probably the only way that they could do that is if they showed you an instant replay or you perceived the event in some other manner. Of course, if you had seen what happened you would then be a witness to the event and you could not sit as a juror.

> What I am saying is that proofs presented by the People must eliminate any doubt which is based on reason, any doubt which would have a rational explanation. What I am saying is, it is a doubt that leaves your mind in a condition that you cannot say you have an abiding conviction to a moral certainty of the truth of the charges against these defendants.

The last sentence of the instruction is troubling in the same way as the instruction in the *Cage* decision. In *Cage*, the Supreme Court used a "reasonable juror" standard and concluded that the use of "substantial" and "grave" in conjunction with a reference to "moral certainty" "made it clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Cage*, 498 U.S. at 41, 111 S.Ct. 328. In footnote 4 of *Estelle*, the Supreme Court disapproved of the standard of review used in *Cage* and reasserted the "reasonable likelihood" standard. *Estelle*, 502 U.S. at 72, 112 S.Ct. 475. Using this standard and viewing the instructions as a whole, *Estelle* affirmed a conviction despite ambiguous jury instructions. Using the *Estelle* test, the Supreme Court has since affirmed jury instructions extremely similar to the one at issue in this case in *Victor*. *Victor*, 511 U.S. at 7, 114 S.Ct. 1239. For this reason, the Court finds that the jury instructions, while troubling, were constitutional.

## V. Conclusion

For the reasons stated above:

IT IS ORDERED that the Judgment of the Report and Recommendation is adopted. Drew's petition for writ of habeas corpus is DENIED with prejudice for the above reasons.