**UNITED STATES of America, Appellee,**

v.

**Jon Cary MAIER, Appellant.**

**No. 83–1851.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 4, 1983.

Decided Nov. 10, 1983.

James M. Rosenbaum, U.S. Atty., Daniel W. Schermer, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., Wayne Nelson, Legal Intern, for appellee.

Marc G. Kurzman, Doris C. McKinnis, Kurzman, Shapiro, Manahan & Partridge, Minneapolis, Minn., for appellant.

Before ROSS, ARNOLD, and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Jon Cary Maier appeals from his conviction for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841. Maier contends (1) that his initial detention was an illegal arrest; (2) that the inventory search of his truck was improper; (3) that he was denied his Sixth Amendment right to a fair trial by the District Court's refusal to allow him to call a particular defense witness; and (4) that insufficient evidence was introduced to prove the substance he possessed was marijuana. We affirm.

### I.

On September 10, 1981, at approximately 2:00 a.m., Minneapolis police officers Rognlie and Carey responded to a call to check on someone sleeping in a vehicle illegally parked on a Minneapolis street. The officers found Jon Cary Maier asleep in the driver's seat of a pickup truck with a "topper" camper unit. They woke Maier, and, in response to police questioning, he gave his name and date of birth but could not produce any identification. The officers ran a driver's license check and a warrant check and learned that Maier's driver's license had been suspended. Because of the license suspension, the officers told Maier he would not be allowed to drive the truck away. They took possession of the keys to the vehicle, informed Maier the truck would be towed, and advised him to leave the area.

After he walked away, Officer Carey began filling out an impound report, while Officer Rognlie began an inventory search of the truck's contents. In the passenger compartment, Rognlie found an open brown cloth pouch containing a large amount of currency. Rognlie ran after Maier overtaking him a block or so from the truck. (Rognlie later testified that when he caught up with Maier, it appeared that Maier was trying to hide behind a wood fence). He asked Maier to whom the bag of money belonged, and Maier denied any knowledge of it. Rognlie then said, "Well, you have to accompany us back to the truck." On the way back, Maier stated that a friend owned the truck, but that he had been using it the past four or five months. Meanwhile, Officer Carey had continued to search the truck, and had found additional currency wrapped in a T-shirt. A later count disclosed that there was about $14,000 in cash in the truck. Carey and Rognlie placed Maier in the back seat of the squad car.

The officers then unlocked and opened the camper top at the rear of the truck. They saw several sleeping bags and a large sheet of plywood about eighteen inches above the floor, blocking further view of the floor. Both officers testified that after opening the top of the camper, they smelled what they believed to be a strong odor of marijuana. They lowered the tailgate and

saw several opaque plastic bags under the plywood. Carey testified that he lifted the plywood sheet a few inches and noticed a large garbage bag partially open at the top, containing what appeared to be a large amount of marijuana. The officers returned to the squad car, advised Maier that he was under arrest for "probable cause for narcotics," and read him his *Miranda* rights. Maier responded that he understood his rights. Shortly thereafter, while en route to jail, Maier stated that he had been living in the truck for four or five months. He also stated, "It is my dope. I am in trouble and I know it." He then requested a lawyer, and all questioning stopped.

The police had the pickup truck towed to the police garage and obtained a search warrant. Pursuant to the warrant, they seized approximately 190 pounds of marijuana located in plastic bags in the camper. The grand jury charged Maier with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 (1976).

Maier moved to suppress the marijuana and related materials seized by the police on the ground that the police did not follow established procedures for impounding a vehicle. After a hearing in October 1981, the District Court, 553 F.Supp. 438, ordered the evidence suppressed. On appeal, this Court reversed the suppression order, holding that the inventory search of the camper was proper. We also held that the police continued to act properly when they obtained a search warrant after becoming suspicious of the contents of the camper during the valid inventory search. *United States v. Maier,* 691 F.2d 421 (8th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983).

After a bench trial on May 18 and 19, 1983, the District Court[1] found Maier guilty as charged, and sentenced him to two years' imprisonment to be followed by a two-year special parole term. This appeal followed.

## II.

Maier asserts that when the police officers pursued and detained him and placed him in the back seat of the squad car, their actions constituted an arrest. At that point, Maier contends, the officers had only a mere suspicion that a crime had been committed based on the presence of currency in the cab of the truck. Maier claims he was thus seized without probable cause, and that all subsequent evidence, including statements made after the illegal arrest, must be suppressed under *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

■ Even if we assume *arguendo* that the initial detention was illegal and that the point is properly before us on this appeal, despite Maier's failure to raise it on the record at the pretrial suppression hearing we considered on the former appeal, defendant is still entitled to no relief. Much of the evidence admitted against Maier (the money, the marijuana, testimony that police found receipts bearing his name in the pouch containing money) was fruit of a search which this Court has already determined was a valid inventory search. *United States v. Maier, supra,* 691 F.2d 421. We will not now reconsider this holding. It is the law of the case. Moreover, Maier's incriminating statements (that he had been living in the camper for months; that it was his "dope") were made voluntarily after marijuana had been discovered during a legal search, and after Maier had been given his *Miranda* warnings. The statements were obtained not by improper exploitation of the illegal arrest, but only after intervening events had given police probable cause to arrest Maier. See *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). Clearly there was probable cause to arrest Maier when the marijuana was discovered, and in fact that is the point at which the officers formally

1. The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota.

placed him under arrest. The alleged illegal detention lasted only a few minutes. His admissions came not after extended interrogation, but very shortly after the warnings were initially given. We conclude that any connection between the initial detention and the admissions is so attenuated that the admissions are not infected by the prior illegality, if any.

### III.

Maier's other claims may be dealt with without extended discussion. We have already decided that the inventory search was proper. We have considered and reject the arguments that the District Court abused its discretion in refusing to allow Maier to call as a witness the Assistant United States Attorney who was prosecuting the case, and that there was insufficient evidence to prove that the substance seized was marijuana.

Affirmed.