Mario Darnell FRIDAY, # 240462,
Petitioner,

v.

Terry PITCHER, Respondent,

No. CIV.01–CV–71184–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 21, 2002.

Mario Friday, Muskegon, MI, pro se.

Brenda E. Turner, Brad H. Beaver, Michigan Department of Attorney, General Habeas Corpus Division, Lansing, for Respondent.

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

STEEH, District Judge.

## I. Introduction

Mario Darnell Friday, ("petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges the legality of his conviction after a bench trial in the Recorder's Court for the City of Detroit of one count of second degree murder, M.C.L. § 750.317, and one count of possession of a firearm during the commission of a felony ("felony firearm"). M.C.L. § 750.227b. Petitioner was sentenced to twenty-five to sixty-five years imprisonment for second degree murder and a consecutive two years imprisonment for felony firearm. Petitioner challenges his sentence for second degree murder, as well as his conviction of that crime. The Court concludes for the following reasons that the petition must be denied.

## II. Factual Background

Petitioner was convicted of murdering Frank Marzett on December 22, 1993.[1] "The trial court found as fact at the conclusion of trial that defendant, without the

---

1. At various places in the trial transcript the victim's first name is spelled Franklyn and Franklin and his last name is spelled Marzett and Marzette.

slightest justification or legitimate concern for his own safety, shot the victim in the back five times with a semi-automatic pistol." *People v. Friday,* Michigan Court of Appeals Docket No. 182604 (July 29, 1997). The evidence established that petitioner and Mr. Marzett were members of a group which stole cars. The evidence also showed that petitioner and Mr. Marzett had a dispute over one of the cars members of the group may have stolen. Tony Ingram testified that petitioner had accused Mr. Marzett of taking one of his friend's cars and threatened to catch him.

Petitioner testified on his own behalf that, immediately before he shot the victim, the victim "turned around and went in his pocket on me." Trial Transcript ("Tr.") November 10, 1994 at 82. Petitioner admitted never seeing a gun on Mr. Marzett. Petitioner further testified that, although he did not know if the victim was pulling something out of his pocket or what the victim was doing, he (petitioner) "was in fear for my life." *Id.* at 83. Petitioner denied having intended to shoot Mr. Marzett. However, petitioner also testified that he shot Mr. Marzett in the back from a distance of about three to five feet. Mr. Marzett ran away when petitioner began shooting at him, but petitioner kept firing anyway.

Petitioner acknowledged that he fired several shots at Mr. Marzett. He was not sure how many. Five shell casings fired from the murder weapon were found at the scene. Petitioner also testified that he pulled the trigger only once, but the gun kept firing. Tr. November 10, 1994 at 86–88, 107–110. However, it was stipulated that the murder weapon was recovered and "test fired and found to be normally operable. And that it is a semi-automatic and not fully automatic." *Id.* at 61–62. In other words, it was stipulated that the trigger had to be pressed separately for every shot the gun fired. Pressing the trigger once and holding it down would only fire one shot. Pressing the trigger and releasing it without pressing it again would only fire one shot. To fire five shots, the trigger had to be pressed five times after being released following each shot fired.

Forensic evidence showed that two .22 caliber bullets struck Mr. Marzett in the back of his upper right arm. A third .22 caliber bullet struck him in the left shoulder blade. This bullet passed through the shoulder area, passed through the left lung, aorta, trachea, and right lung, and then exited the body through the right upper chest area. It was this bullet which caused Mr. Marzett's death.

## III. Procedural History

Petitioner was convicted of second degree murder and felony firearm on November 14, 1994, after a bench trial before Judge Vera Massey Jones of the Recorder's Court for the City of Detroit. Petitioner was sentenced on November 30, 1994, to twenty-five to sixty-five years for second degree murder and a consecutive two year term for felony firearm.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising a single issue:

I. The sentence imposed is disproportionate to this eighteen year old high school student with no prior criminal record, especially because the sentencing court focused on the defendant's lifestyle and associations rather than on the instant offense.

Petitioner subsequently returned to the trial court and filed a motion for relief from judgment raising the following claims:

I. Petitioner's second degree murder conviction is supported by insufficient evidence.

II. Petitioner's arrest was illegal as was the failure to provide him counsel or a parent at the time of arrest.

III. The arrest warrant was invalid.

IV. Petitioner received ineffective assistance of appellate counsel in his appeal of right.

V. Petitioner received ineffective assistance of trial counsel.

The trial court denied the motion in an order dated March 18, 1999. The trial court's order briefly states that petitioner's claims lack merit, summarizing the matter as follows:

> An evidentiary hearing was held wherein defendant admitted that he freely gave a statement to the police concerning the murder. The evidence at that hearing established that the defendant was brought to the police station by his mother. Further, the defendant made the statement within 45 minutes of arriving at the station. Therefore, no unlawful detention occurred. Evidence of malice was shown by multiple gun shots. One being to the back of the deceased.
>
> It would have been a waste of time for appellate counsel to raise these issues. Appellate counsel raised the only meritorious issue.

*People v. Friday*, Order, Third Judicial Circuit Court Criminal Division Docket No. 94–0000918 (March 18, 1999).

The trial court's order also states:

> Thus, defendant has failed to show good cause for failure to raise these issues in prior appeals. Nor has defendant established that he is entitled to the relief request [sic].

*Id.*

Petitioner sought leave to appeal the trial court's denial of his motion for relief from judgement in the Michigan Court of Appeals. The Michigan Court of Appeals denied petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Friday*, Michigan Court of Appeals Docket No. 219419 (March 22, 2000).

The Michigan Supreme Court denied petitioner's delayed application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Friday*, Michigan Supreme Court Docket No. 116838 (September 26, 2000).

On or about March 27, 2001, petitioner filed the instant petition for a writ of habeas corpus in this Court, raising the following claims for relief:

I. Petitioner's second degree murder conviction is supported by insufficient evidence.

II. Petitioner was denied due process and equal protection when he was arrested and detained as a juvenile without probable cause and was interrogated by the police without an attorney or adult present.

III. Petitioner was arrested without a valid warrant.

IV. Petitioner was denied the effective assistance of appellate counsel in his appeal of right.

V. Petitioner was denied the effective assistance of trial counsel.

VI. Petitioner's constitutional rights were violated by application of Michigan's automatic juvenile waiver statute, M.C.L. 600.606.

VII. Petitioner's twenty-five to sixty-five year sentence for second degree murder violates the Eighth Amendment's prohibition against cruel and unusual punishment.[2]

---

**2.** Claims VI and VII as numbered above do not appear in petitioner's Statement of Questions. However, petitioner sets forth these claims in the body of his petition and respondent has noted them. Therefore, this Court will address these claims.

Respondent has answered the petition. Respondent asserts that review of all of petitioner's claims for habeas relief is barred by his procedural default of failing to properly raise the claims in his appeal of right or in his motion for relief from judgment and having no available procedure to present these claims the Michigan state courts at this time. Respondent notes that the orders of the Michigan Court of Appeals and Michigan Supreme Court may be regarded as ambiguous unexplained orders which do not clearly and explicitly rely on procedural default as their basis of decision, because these courts' orders only cite M.C.R. 6.508(D), without indicating that these courts meant to invoke the procedural default provision of that rule, M.C.R. 6.508(D)(3). *But see, Simpson v. Jones,* 238 F.3d 399, 407 (6th Cir.2000). However, respondent adds that, assuming that the state appellate courts' orders constitute unexplained orders, this Court must read through the appellate courts' orders to the last explained order, the trial court's order denying petitioner's motion for relief from judgment. As noted, the trial court's order denying relief denied petitioner's claims on the merits and also stated that petitioner had not shown good cause for his failure to raise his claims in his prior appeals. The latter statement by the trial court was a clear and explicit reference to the procedural bar of M.C.R. 6.508(D)(3).

### IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[3]; *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

---

**3.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis in original).

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

## V. *Discussion*

### A.

■ Respondent contends that all of petitioner's claims are procedurally defaulted because they were not presented in his appeal of right as federal constitutional claims. Only petitioner's challenge to his sentence was presented in petitioner's appeal of right. Petitioner challenged his sentence in his appeal of right as disproportionate under principles established by *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990). The rest of petitioner's habeas claims were presented to the state courts for the first time in his motion for relief from judgment.

Petitioner contends that his claims are not procedurally defaulted because the Michigan Court of Appeals and the Michigan Supreme Court ruled that he had failed to establish entitlement to relief under M.C.R. 6.508(D) without expressly citing the procedural default provision of that rule, M.C.R. 6.508(D)(3). Petitioner cites *Morse v. Trippett*, 102 F.Supp.2d 392, 401–02 (E.D.Mich.2000) and *Garrison v. Elo*, 156 F.Supp.2d 815, 822–23 (E.D.Mich.2001) for support.

Petitioner's reliance on *Morse v. Trippett* and *Garrison v. Elo* is misplaced for two reasons. First, in *Simpson v. Jones*, 238 F.3d at 407–08, the Sixth Circuit Court of Appeals held that an order of the Michigan Supreme Court denying leave to appeal and stating simply that the petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)" was sufficient to constitute a procedural bar, despite its brevity and its failure to cite the specific procedural default provisions of M.C.R. 6.508(D)(3). The procedural default decisions of the district courts in *Morse v. Trippett* and

*Garrison v. Elo* have been effectively overruled by *Simpson v. Jones*.[4]

Second, even if the decisions of the Michigan appellate courts were not sufficient to establish a procedural bar, the last reasoned state court judgment—the trial court's denial of petitioner's motion for relief from judgment—expressly invoked a procedural bar. The trial court did so by stating that petitioner failed to show entitlement to relief because he failed to show good cause for not presenting his claims in his prior appeals. This statement by the trial court was sufficient to invoke a procedural bar, even though the trial court also addressed the substance of petitioner's claims and found that they had no merit. See *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989)(in which the Supreme Court made it clear that a state court may address the merits of a federal claim in an alternative holding without waiving its procedural bar and permitting federal review).

Thus, all of petitioner's claims presented for the first time in his motion for relief from judgment are procedurally defaulted. Only petitioner's challenge to his sentence was arguably presented in his appeal of right.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750–

751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If petitioner does not show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Bell v. Smith*, 114 F.Supp.2d 633, 638 (E.D.Mich.2000) (Gadola, J). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–480, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir.1998).

Petitioner contends that the Michigan appellate courts' citation to M.C.R. 6.508(D) was insufficient to establish a procedural default. This Court has held that, following *Simpson v. Jones*, petitioner is mistaken and that, further, the trial court's alternative ruling on procedural grounds also established a procedural bar.

Perhaps because he believed that his claims were not procedurally defaulted, pe-

---

**4.** The district court's order in *Morse v. Trippett* has been vacated. *See, Morse v. Trippett*, 2002 WL 257207 (6th Cir.Mich.)(Feb. 20, 2002)(district court's determination that petitioner's ineffective assistance claims were not procedurally defaulted was error in light of the holding of *Simpson v. Jones*). *See also,*

*Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir.Mich. 2002)("the Michigan Court of Appeals and Michigan Supreme Court's statements that Burroughs was not entitled to relief under M.C.R. 6.508(D) presents a sufficient explanation that their rulings were based on procedural default.").

titioner has not explicitly claimed to show good cause for his procedural defaults and prejudice therefrom. However, petitioner did present and exhaust claims of ineffective assistance of trial and appellate counsel. In the light of petitioner's *pro se* status, this Court shall review petitioner's claims of ineffective appellate and trial counsel to determine whether these claims establish good cause for his procedural defaults.

## B.

■ Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639, 91 L.Ed.2d 397; *Mapes v. Coyle,* 171 F.3d 408 (6th Cir.1999); *Richardson v. Elo,* 974 F.Supp. 1100, 1104 (E.D.Mich.1997) (Gadola, J.). Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Attorney error that falls short of constitutional ineffective assistance of counsel does not constitute cause to excuse a procedural default. *Bruton v. Phillips,* 64 F.Supp.2d 669, 682–683 (E.D.Mich.1999) (Gadola, J.). If petitioner's ineffective assistance of appellate counsel claim lacks merit, it cannot constitute cause to excuse his default. *Sherrill v. Hargett,* 184 F.3d 1172, 1176 (10th Cir.1999).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey,* 469 U.S. 387, 396–397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every

nonfrivolous issue requested by a defendant or suggested by the record. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ An attorney's failure to present a meritless issue on appeal does not constitute ineffective assistance of counsel. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes,* 171 F.3d at 413. Thus, to determine whether petitioner received ineffective assistance of appellate counsel, this Court must first examine the merits of the claims which appellate counsel might have presented in petitioner's direct appeal, but failed to do so. "[T]he questions then become whether appellate counsel was constitutionally ineffective for failing to raise those errors on appeal and, if so, whether the petitioner was prejudiced by counsel's unsatisfactory representation." *Mapes,* 171 F.3d at 413–14.

■ Petitioner claims that he received ineffective assistance of trial counsel, because his trial counsel failed to seek suppression of his statement to the police on the basis of petitioner's juvenile status and warrantless arrest. Petitioner concedes that there was no evidence that his statement to the police was involuntary. The trial judge found that petitioner admitted that he freely gave his statement to the police and that the evidence established that he was brought to the police station by his mother and gave his statement within forty-five minutes of arriving at the station.

■ The Michigan appellate courts will not disturb the trial court's factual findings unless they are clearly erroneous. *People v. Sexton,* 461 Mich. 746, 752, 609 N.W.2d 822 (2000); *People v. Givans,* 227 Mich. App. 113, 119, 575 N.W.2d 84 (1997).[5] A

---

**5.** Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under

Section 2254. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief will not lie for errors of

finding of fact is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *Givans, supra.*

■ In *Givans, supra* at 121, 575 N.W.2d 84, the Michigan Court of Appeals provided a list of factors to be considered in determining whether a juvenile's statement is voluntary: The factors that must be considered in applying the totality of the circumstances test to determine the admissibility of a juvenile's confession include (1) whether the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with M.C.L. § 764.27; MSA 28.886 and the juvenile court rules, (3) the presence of an adult parent, custodian, or guardian, (4) the juvenile defendant's personal background, (5) the accused's age, education, and intelligence level, (6) the extent of the defendant's prior experience with the police, (7) the length of detention before the statement was made, (8) the repeated and prolonged nature of the questioning, and (9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention. *See also, People v. Fike*, 228 Mich.App. 178, 182, 577 N.W.2d 903 (1998).

In the present case the evidence showed that petitioner was informed of his *Miranda* rights and understood them and that his statement was voluntarily given. Petitioner's mother took him to the police station. While she was not present during his interrogation, there is no evidence that petitioner requested that she be present. Nor did petitioner request an attorney. For purposes of this opinion, this Court shall assume without deciding that petitioner was sixteen years old at the time of his offense and his interrogation which took place the day after the shooting.[6] Thus, while not a legal adult, petitioner was not of extremely tender years. The evidence showed that petitioner had completed the tenth grade of high school. Petitioner's answers in the record appear to be those of person of normal intelligence. There is no evidence in the record that petitioner is of subnormal intelligence or suffers from any mental illness. Petition-

state law alone. *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). In reviewing a state court judgment, a federal habeas court does not act as a super state supreme court. *Kelly v. Withrow*, 822 F.Supp. 416, 420 (W.D.Mich.1993); *aff'd* 25 F.3d 363 (6th Cir.1994); *cert. den.* 513 U.S. 1061, 115 S.Ct. 674, 130 L.Ed.2d 607 (1994). Federal courts do not act as an additional state appellate court to review a state court's interpretation of its own law and procedure. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). This Court examines petitioner's defaulted state law claims to determine whether failure to present these claims may have been ineffective assistance of counsel, which is a federal constitutional claim, and, if found, may excuse petitioner's procedural defaults. This Court does not review petitioner's defaulted state law claims as an independent basis of habeas relief.

**6.** However, at the hearing on the voluntariness of petitioner's statement, the police officer who questioned petitioner said that petitioner was seventeen at the time of his interrogation and the defense did not correct or object to this statement. Motion to Suppress Tr. at 8. At trial, held less than a year after the killing, when petitioner denied that he knew that signing his name to his statement to the police indicated that he agreed with it, the trial judge asked him: "At eighteen years old you don't know when you sign your name to something that you are saying that it's right, or that you're verifying it in any way?" Tr. November 10, 1994 at 118. Petitioner replied that, as he had never been in trouble before, he did not understand the significance of signing the statement. However, petitioner did not correct the judge's reference to his age being eighteen.

er made his statement after only forty-five minutes. There are no allegations and no evidence that he was injured, intoxicated, ill, physically or mentally abused or deprived of food, sleep, or medical attention during his interrogation. Regarding compliance of the police with M.C.L. § 764.27, that statute by its own terms states that, pursuant to M.C.L. § 600.606 as in effect in 1993 and 1994, the circuit courts had jurisdiction to hear specified juvenile violations, including violations of M.C.L. § 750.316, the first degree murder statute, and M.C.L. § 750.317, the second degree murder statute, when the juvenile was fifteen years of age or older and less than seventeen years of age. M.C.L. § 764.27.[7] It is undisputed that petitioner was at least fifteen years of age or older at the time of the shooting and his arrest.

Review of the facts and Michigan law concerning the admission of statements made by juveniles to the police shows that an attempt to have petitioner's statement to police suppressed on the basis of his juvenile status would not have succeeded. The only factor weighing against admissibility was petitioner's lack of prior experience in dealing with the police. All the other factors indicate that his statement was knowingly and voluntarily made without undue influence or coercion. Therefore, petitioner fails to show that trial counsel was ineffective for not pursuing this theory as a way to seek suppression of petitioner's statement to the police. Similarly, appellate counsel was not ineffective for not raising this issue.

■ Petitioner also maintains that trial counsel was ineffective for failing to object to his automatic waiver from probate court to circuit court. However, the Michigan courts have held that juveniles are not entitled to dispositional hearings before being waived from probate court to circuit court under the automatic waiver provision, because there is no constitutional right to be treated as a juvenile. *People v. Parrish,* 216 Mich.App. 178, 549 N.W.2d 32 (1996). There was no statutory basis to object to petitioner's automatic waiver to circuit court, because he was charged with a statutorily ennumerated life offense felony conferring jurisdiction on the circuit court to try a defendant his age at the time, first degree murder, M.C.L. § 750.316. M.C.L. § 600.606(1) and (2)(a); *People v. Spearman,* 195 Mich.App. 434, 491 N.W.2d 606 (1992). Consequently, it was not ineffective assistance of trial or appellate counsel not to pursue this attack on petitioner's charge and eventual conviction.

■ Petitioner contends that counsel was ineffective for failing to challenge his warrantless arrest. This claim lacks merit.

A police officer may arrest an individual without a warrant if a felony has been committed and the officer has probable cause to believe that the individual committed the felony. MCL 764.15(c); *People v. Champion,* 452 Mich. 92, 115, 549 N.W.2d 849 (1996). In reviewing a challenged finding of probable cause, an appellate court must determine whether the facts available to the arresting officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected individual had committed the felony. *People v. Oliver,* 417 Mich. 366, 374, 338 N.W.2d 167 (1983); *People v. Russo,* 439 Mich. 584, 603–604, 487 N.W.2d 698 (1992); *People v. Sloan,* 450 Mich. 160, 168, 538 N.W.2d 380 (1995).

---

7. The statute was amended in 1996. Michigan's circuit courts now have jurisdiction to hear specified juvenile violations when the juvenile is fourteen years of age or older and less than seventeen years of age.

Insofar as the record reveals, the officer who actually made the arrest, William Brantley, possessed substantial information that connected defendant to the crime. His investigation of the murder had revealed petitioner's name as a suspect in part because witnesses had heard petitioner make threats against the victim over a dispute about a stolen car. Further, petitioner was brought to the police station after he had admitted to his mother that he killed Mr. Marzett. Less than an hour after arriving at the police station, petitioner freely and voluntarily admitted to the police that he shot Mr. Marzett to death, claiming that he acted out of an honestly held belief that his life was in imminent danger.

While the record is sparse as to what facts were known by Officer Brantley before he arrested petitioner, this Court cannot find that he lacked probable cause to arrest him as the killer. The paucity of the record regarding when Officer Brantley was told that petitioner had admitted the killing to his mother is probably due to the fact that the probable cause question was not in dispute.

Further, even if petitioner was arrested without probable cause, this would not have entitled him to suppression of his statement. In *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), officers testified that they arrested the defendant for the purpose of questioning him as part of their investigation of a murder. The United States Supreme Court condemned the conduct, noting that the officers "virtually conceded" the impropriety of the arrest "when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.'" *Id.* at 605, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. Citing *Brown,* the Michigan Court of Appeals noted its "emphatic disapproval" of similar police conduct in *People v. Wash-*

*ington,* 99 Mich.App. 330, 335, 297 N.W.2d 915 (1980).

■■■■■ However, a finding that an illegal arrest has been made does not result in an automatic suppression of a statement made after that arrest. The mere fact of an illegal arrest "does not *per se* require the suppression of a subsequent confession." *Id.* at 334, 297 N.W.2d 915. It is only when an "unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee" that the evidence is suppressed under the exclusionary rule. *People v. Mallory,* 421 Mich. 229, 240–241, 243, n. 8, 365 N.W.2d 673 (1984). Intervening circumstances can break the causal chain between the unlawful arrest and inculpatory statements, rendering the confession " 'sufficiently an act of free will to purge the primary taint' " of the unlawful arrest. *Brown, supra* at 602, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In *Washington, supra,* the defendant was arrested without probable cause. After his arrest, the defendant's sister told the police that the defendant had admitted complicity in the crime. When the defendant was confronted with his sister's statement, he confessed. The Michigan Court of Appeals held that "the primary taint of the unlawful arrest was sufficiently attenuated by the subsequent evidence establishing probable cause so that the defendant's confession is properly admissible." *Id.* at 336, 297 N.W.2d 915. Likewise, in *People v. Hampton,* 138 Mich.App. 235, 361 N.W.2d 3 (1984), the defendant was arrested without probable cause and made an exculpatory statement. Several hours later, the police told the defendant of new evidence that had been uncovered, and they asked the defendant if he wished to change his statement. He declined at

first, but eventually implicated himself in the crime approximately eight hours after his first statement. The Michigan Court of Appeals found that the later statement was "not the result of the exploitation of the earlier arrest of defendant without probable cause." *Id.* at 238, 361 N.W.2d 3.

Other courts have held that a custodial confession following an illegal arrest need not be suppressed if the police have uncovered evidence sufficient to establish probable cause to arrest the defendant before the challenged custodial statement was given. Under such circumstances, " 'one could question the wisdom of requiring police to go through the formality of releasing [the defendant], only to rearrest him outside the jailhouse door.' " *People v. Pierson,* 166 Ill.App.3d 558, 564, 117 Ill.Dec. 18, 519 N.E.2d 1185 (1988), quoting *People v. Lekas,* 155 Ill.App.3d 391, 414, 108 Ill.Dec. 60, 508 N.E.2d 221 (1987). *See also United States v. Manuel,* 706 F.2d 908, 911 (9th Cir.1983) (even if the defendant's arrest was illegal, the police accumulated "more than enough evidence" to establish probable cause, including the statements of two separate eyewitnesses, before he confessed), and *United States v. Maier,* 720 F.2d 978, 980 (8th Cir.1983) (the defendant's statements "were obtained not by improper exploitation of the illegal arrest, but only after intervening events had given police probable cause to arrest" him).

In the present case petitioner was brought to the police station by his mother to whom he had confessed shooting the victim. Even if petitioner's mother did not tell the police that petitioner had admitted the shooting before he was arrested, the fact that she brought him to the police station and allowed him to make a statement to the police while alone strongly indicates that she would have told the police what she knew soon afterwards. This would have provided more than probable cause. Furthermore, less than an hour after arriving at the police station, petitioner had been given his *Miranda* warnings which he indicated he understood and he voluntarily confessed to shooting Mr. Marzett. The fact that petitioner was advised of his constitutional rights and freely and voluntarily took the initiative to make a statement to the police regarding his perpetration of the shooting shows that his statement was not the product of improper police tactics or the fruit of an illegal arrest. Any taint of an illegal arrest was purged by the warnings petitioner received and his voluntarily and quickly made statement which he believed would be as exculpatory as possible.

 Furthermore, even if petitioner's arrest was unlawful, it would not bar his prosecution with lawfully admitted evidence. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)(citing *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). The exclusionary rule limits what proof the Government may offer against the accused at trial, closing the courtroom door to *evidence* secured by official lawlessness. "However, [the defendant] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews,* 445 U.S. at 474, 100 S.Ct. 1244.

Accordingly, this Court concludes that a challenge to the legality of petitioner's warrantless arrest would not have resulted in the suppression of his confession, or in his release from custody. Consequently, it

was not ineffective assistance of counsel to decline to pursue this futile and meritless claim.

Petitioner contends that insufficient evidence supports his second degree murder. This Court disagrees.

██ The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether the prosecution presented evidence from which a reasonable factfinder could find that the essential elements of the crime were proven beyond a reasonable doubt.[8] The appropriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review recognizes the trier of fact's responsibility to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia, supra* at 318, 99 S.Ct. 2781.

The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Kines v. Godinez,* 7

F.3d 674, 678 (7th Cir.1993); *cert denied,* 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders,* 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).

The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz,* 615 F.Supp. 224, 227 (E.D.Mich.1985), *aff'd,* 788 F.2d 400 (6th Cir.), *cert. denied,* 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362(1986). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; Evans–Smith v. Taylor,* 19 F.3d 899, 909 (4th Cir.), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994)(holding that circumstantial evidence that Evans–Smith strangled his wife and staged a fake robbery-rape scene to conceal his crime was insufficient to support his murder conviction).

Petitioner challenges the sufficiency of the evidence to support his second degree murder conviction. This Court must reject his challenge if, considering the evidence in the light most favorable to the prosecution, it concludes that a rational fact finder could have found that the elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia,*

---

**8.** Where the defense presents evidence, this evidence may directly or inferentially support a reasonable finding of guilt. For instance, if a defense witness called to provide alibi evidence actually testified she never saw the defendant the day of the crime, or worse (for the defendant) testified she saw the defendant and victim together shortly before the crime. In the present case, petitioner testified on his own behalf. As shall be seen, a good deal of petitioner's testimony supported his conviction.

443 U.S. at 319, 99 S.Ct. 2781. In making this judgment, this Court must bear in mind that the beyond a reasonable doubt standard, itself mandated by the Due Process Clause, requires the factfinder "to reach a subjective state of near certitude of the guilt of the accused [and] symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." *Jackson v. Virginia*, 443 U.S. at 315, 99 S.Ct. 2781.[9] *See also, Victor v. Nebraska*, 511 U.S. 1, 14, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)(rejecting a due process challenge to a jury instruction in a criminal case, concluding that, "the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused"); *United States v. Fountain*, 993 F.2d 1136, 1139 (4th Cir. 1993); and "Beyond Reasonable Doubt" 68 N.Y.U.L.Rev. 970 (1993)(Newman, J.).

This Court recognizes that the very existence of the *Jackson* test presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. This Court shall assume that judges may do so also. The test was adopted to provide an additional safeguard against that possibility, and gives added assurance that guilt should never be found except on a rationally supportable state of near certitude, that is, proof upon which a rational factfinder could find proof of the crime beyond a reasonable doubt. *Evans–Smith v. Taylor*, 19 F.3d at 905. Therefore, the question before this Court in the instant case is whether the evidence, taken together and viewed in the light most favorable to the prosecution, could allow any rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the elements of second degree murder. *Warren v. Smith*, 161 F.3d at 360.[10] In conducting

9. "In a criminal case [ ] we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.... In this context, I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free. It is only because of the nearly complete and long-standing acceptance of the reasonable-doubt standard by the States in criminal trials that the Court has not before today had to hold explicitly that due process, as an expression of fundamental procedural fairness, requires a more stringent standard for criminal trials than for ordinary civil litigation." *In re Winship*, 397 U.S. at 371, 90 S.Ct. 1068(Harlan, J., concurring).

10. This Court recognizes that, under the AEDPA, habeas relief may be granted only if a state court decision is contrary to controlling United States Supreme Court precedent, an objectively unreasonable application of such precedent, or based on an unreasonable determination of the facts. To warrant habeas relief, a state court adjudication must not be merely incorrect; it must also be objectively unreasonable. *Williams v. Taylor*, 529 U.S. at 409–411, 120 S.Ct. 1495. The First Circuit has recently stated that habeas review of an insufficiency of the evidence claim involves examining whether the state court decision "is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted[,]" and that "[i]t may be useful, although not mandatory, to review first the underlying constitutional issue, here the *Jackson* question." *Hurtado v. Tucker*, 245 F.3d 7, 15 (1st Cir.2001). This Court disagrees that an additional level of deference to the state court's decision is required in an insufficiency of the evidence claim. Under *Jackson*, a defendant is only entitled to relief from a jury conviction if the evidence was so deficient that no reasonable or rational jury could have found the elements of the crime beyond a reasonable doubt. Where the evidence presented at trial was so weak that the petitioner is entitled to relief under *Jackson*, because no rational or reasonable jury could have found proof beyond a reasonable doubt

such an inquiry this Court considers all the evidence presented in the record.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781. Hence, it is necessary to summarize the elements of second degree murder under Michigan law.

■■■■ Petitioner was convicted of second-degree murder. To convict a defendant second-degree murder, it must be shown that the defendant "acted with intent to kill or to inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 733, 299 N.W.2d 304 (1980). Second-degree murder is a killing committed with malice aforethought, but without premeditation and without deliberation. *People v. Morrin*, 31 Mich.App. 301, 310–311, 187 N.W.2d 434, 438–439 (1971), *leave den.*, 385 Mich. 775 (1975). Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse (such as insanity) or justification (such as self-defense) or mitigate the degree of the offense to manslaughter. *Id.*[11]

■■■ The elements of murder are (1) the killing of a human being (2) with the intent to kill, or to do great bodily harm, or with wilful and wanton disregard of the likelihood that the natural tendency of one's actions will be to cause death or great bodily harm. *People v. Kelly*, 423 Mich. 261, 273, 378 N.W.2d 365 (1985); *People v. Spearman*, 195 Mich.App. 434, 491 N.W.2d 606 (1992).

The Michigan Supreme Court has summarized the law of first and second degree murder as follows:

> What was known at common law as the crime of murder, and what is now known under our statutory scheme as the crime of second-degree murder, M.C.L. § 750.317; M.S.A. § 28.549, is committed only if the actor entertains one of three possible intents: the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *People v. Aaron*, 409 Mich. 672, 713–714, 299 N.W.2d 304 (1980). In contrast, the statutory crime of first-degree premeditated murder is committed only if the defendant entertains the intent to kill. *People v. Garcia*, 398 Mich. 250, 259, 247 N.W.2d 547 (1976). In addition, the intent to kill in first-degree premeditated murder must be deliberate and premeditated. *People v. Hansen*, 368 Mich. 344, 351, 118 N.W.2d 422 (1962).

*People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984).[12]

of all the elements of the crime, a state trial or appellate court's decision upholding the defendant's conviction is objectively unreasonable.

11. In *People v. Morrin*, Justice (then Judge) Levin succinctly defined second-degree common-law murder as follows:

> A person who kills another is guilty of the crime of murder if the homicide is committed with malice aforethought. Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to man-

slaughter. The intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm. *People v. Morrin*, 31 Mich. App. at 310–11, 187 N.W.2d 434. (Footnotes omitted.)

12. Consequently, second-degree murder is always a lesser included offense of first-degree murder. First-degree murder is second-degree (common-law) murder plus an element of either premeditation or the perpetration or attempt to perpetrate an enumerated felony. *People v. Allen*, 390 Mich. 383, 212 N.W.2d 21 (1973). Conversely, second-degree murder is

■ In the present case overwhelming evidence showed beyond a reasonable doubt that petitioner committed second degree murder when he shot the victim Frank Marzett to death.

■ To establish the crime of second-degree murder, the prosecutor must "prove that [the] defendant caused the death of the victim and that the killing was done with malice and without justification or excuse." *People v. Harris*, 190 Mich. App. 652, 659, 476 N.W.2d 767 (1991). "Malice is the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm with knowledge that such is the probable result. Malice may be inferred from the facts and circumstances of the killing." *Id.* However, "the killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10 (1990). Imperfect self-defense is a variation on the self-defense doctrine and applies when a defendant would be entitled to claim self-defense except that the defendant was the aggressor. *People v. Butler*, 193 Mich.App. 63, 67, 483 N.W.2d 430 (1992). If an imperfect self-defense does apply, it negates malice. *People v. Kemp*, 202 Mich.App. 318, 323, 508 N.W.2d 184 (1993). Accordingly, "[i]mperfect self-defense is a qualified defense that can mitigate second-degree murder to voluntary manslaughter" by eliminating any inference of malice. *Id.*; *see also People v. Sullivan*, 231 Mich.App.

510, 518, 586 N.W.2d 578 (1998), *aff'd.* 461 Mich. 880, 602 N.W.2d 582 (2000). The defense, however, applies only under circumstances in which the defendant does not instigate the fatal altercation already intending to kill or inflict great bodily harm. *Kemp, supra* at 324, 508 N.W.2d 184.[13]

In the present case, petitioner's confession and trial testimony, as well as the physical evidence, showed that he fired several shots at the victim at extremely close range while the victim had his back turned and while the victim was trying to run away. Petitioner claimed that the victim cursed at him and "went into his pocket" before he (petitioner) pulled out his gun and began shooting. However, petitioner admitted that he did not see the victim with a gun and that he did not know why the victim "went into his pocket." It was undisputed that petitioner unleashed the first and only physical violence which occurred in the incident. And that he did so by immediately resorting to gunfire.

Petitioner testified that he only pulled the trigger once, nonetheless causing the gun to fire multiple times. Recovered shell casings showed that the gun was fired at least five times at the scene. Three shots struck the victim, all from the rear. It was stipulated that the gun was test fired by the police and was a semi-automatic pistol which was in normal operating condition. Hence, the trigger had to be pulled separately for each shot fired. In the light of these stipulated facts about the gun, petitioner's testimony that he only

---

first-degree murder minus premeditation or the enumerated felony. *People v. Carter*, 395 Mich. 434, 437–438, 236 N.W.2d 500, 502 (1975).

13. Generally speaking, then, if person A starts a fight with person B without malice, but person B escalates the fight to the point where person A honestly and reasonably fears

for his life, person A would commit manslaughter, not murder, if he killed person B at that time. That person A is the original aggressor bars a claim of self-defense, but not imperfect self-defense. The distinction between the two types of self-defense is that perfect self-defense leads to complete exculpation, while imperfect self-defense only mitigates the severity of the killing.

pulled the trigger once lacked all credibility and made petitioner appear to be lying.

Petitioner claimed to be in fear of losing his life. However, the trier of fact was not required to believe this claim and rejected it. Viewed in the light most favorable to the prosecution, the evidence showed that petitioner shot the victim to death while intending to inflict death or great bodily harm. The evidence also showed that petitioner lacked any honest and reasonable belief that his life was in imminent danger or that he was in danger of great bodily harm. Further, the evidence showed that (1) petitioner was aggressor who sought the victim out and confronted him, (2) petitioner alone escalated any verbal altercation which may have been taking place to violence by pulling out his gun and repeatedly shooting the victim in the back, and (3) petitioner continued to fire even as the victim tried to flee for his life. Sufficient evidence was presented for a reasonable trier of fact to find beyond a reasonable doubt that petitioner committed all of the elements of second degree murder and that petitioner's killing of Frank Marzett was not justified by a claim of perfect self-defense or reduced to voluntary manslaughter by a claim of imperfect self-defense.

Accordingly, petitioner's second degree murder conviction is supported by constitutionally sufficient evidence and it was not ineffective assistance of counsel to decline or fail to present this claim to the Michigan courts.

Failing to present meritless claims is not ineffective assistance of counsel. *Mapes,*

171 F.3d at 413. Review of all of petitioner's defaulted claims shows that these claims lack sufficient merit so that failure to present these claims to the trial court or in petitioner's appeal of right was not ineffective assistance of counsel. Hence, petitioner has failed to show good cause for his state procedural defaults and is not entitled to habeas review unless he can show that failure to review his claims would work a manifest injustice.[14]

Petitioner has not shown that failure to consider his claims will result in a "fundamental miscarriage of justice". *Coleman v. Thompson,* 501 U.S. at 750–751, 111 S.Ct. 2546. There is nothing in the record to indicate that constitutional error has probably resulted in the conviction of one who is actually innocent. On the contrary, the record (including petitioner's confession and his trial testimony) overwhelmingly shows that petitioner was guilty of second degree murder and felony firearm. Petitioner has not supported his allegations of constitutional error with any new reliable evidence of actual innocence that was not presented at trial. Hence, petitioner has not shown that he is entitled to review of his claims despite his procedural defaults. *Schlup v. Delo,* 513 U.S. at 324, 115 S.Ct. 851.

### C.

In his direct appeal, petitioner presented a claim that his twenty-five to sixty-five year sentence violated the principle of proportionality set forth in *People v. Milbourn,* 435 Mich. 630, 461 N.W.2d 1

---

**14.** Because petitioner has not shown cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. at 533, 106 S.Ct. 2661. In any event, because petitioner's conviction is supported by overwhelming evidence, petitioner would be unable to show prejudice from the errors alleged in his petition. procedural rule. *Rust v. Zent,* 17 F.3d

155, 161 (6th Cir.1994)(citing, *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Because there is strong evidence of petitioner's guilt and a lack of evidence to support his claim, then the prejudice component of the cause and prejudice test will not be satisfied. *Rust,* 17 F.3d at 161.

(1990). Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus. To the extent that Petitioner argues under Michigan state sentencing law, "his claim is not cognizable in habeas because it is a state law claim." *Thomas v. Foltz*, 654 F.Supp. 105, 107 (E.D.Mich.1987). Claimed violations of state law are not cognizable in federal habeas corpus. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1983).

 Petitioner's claim that his sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment states a claim cognizable in federal habeas corpus. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). It is arguable that petitioner's Eighth Amendment claim is exhausted, because *People v. Milbourn* itself is based, in part, on United States Supreme Court Eighth Amendment precedent. *People v. Milbourn*, 435 Mich. at 650–51, 461 N.W.2d 1. In any event, failure to exhaust state remedies is not an absolute bar to federal habeas review when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings. 28 U.S.C. § 2254(b)(1)(A)(c); *Friday v. Straub*, 175 F.Supp.2d 933, 936 (E.D.Mich.2001(Gadola, J.)). Consequently, this Court shall address the merits of petitioner's Eighth Amendment claim.

 A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Cook v. Stegall*, 56 F.Supp.2d 788, 797 (E.D.Mich.1999)(Gadola, J.). Second degree murder is punishable by a sentence of life or any term of years. M.C.L.A. 750.317; M.S.A. 28.549. A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir.2000). Generally, federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute. *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir.2000); *Harp v. Yukins*, 2000 WL 1772619, *2 (E.D.Mich. October 30, 2000)(Steeh, J.).

 In the present case, petitioner claims that his sentence was excessive and disproportionate, because of the fact that he was a first time offender who was a juvenile when the crime was committed. The United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680. Thus, successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare". *Rummel v. Estelle*, 445 U.S. at 272, 100 S.Ct. 1133. Federal courts will therefore generally not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *Seeger v. Straub*, 29 F.Supp.2d 385, 392 (E.D.Mich.1998)(Tarnow, J).

 The United States Supreme Court has declared that life imprisonment without possibility of parole for possession of twenty-four ounces of cocaine raises no inference of gross disproportionality. *Harmelin*, 501 U.S. at 1004–05, 111 S.Ct. at 2706–07 (Kennedy, J., concurring). *A fortiori*, petitioner's twenty-five to sixty-

five year sentence for murder raises none here. *See also Solem v. Helm,* 463 U.S. 277, 290 n. 15, 103 S.Ct. 3001, 3009 n. 15, 77 L.Ed.2d 637 (1983) ("no sentence of imprisonment would be disproportionate" to felony murder).

Further, several Federal Courts of Appeals have ruled that a mandatory sentence of life imprisonment without possibility of parole is not disproportionate to the crime of single or multiple counts of first degree murder committed by a juvenile. *Harris v. Wright,* 93 F.3d 581, 584–85 (9th Cir.1996)(murder of one victim by 15–year–old); *Rice v. Cooper,* 148 F.3d 747, 751–52 (7th Cir.1998)(murder of four victims by illiterate and mildly retarded 16–year–old); *Rodriguez v. Peters,* 63 F.3d 546, 566–68 (7th Cir.1995)(murder of two victims by 15–year–old). Petitioner was not convicted of first degree murder. However, he also was not sentenced to life without the possibility of parole. Thus, neither the length of petitioner's sentence, nor his alleged juvenile status at the time he killed Frank Marzett renders his sentence unconstitutional. *See also, Hawkins v. Hargett,* 200 F.3d 1279, 1280–85 (10th Cir.1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000)(Sentences totaling one hundred years for home burglary, forcible sodomy, rape, and robbery with a dangerous weapon were not unconstitutionally disproportionate under the Eighth Amendment guarantee against cruel and unusual punishment, though defendant was only thirteen at the time of the offenses; as a result of the availability of parole and "good time" credits, defendant would actually only serve roughly one-third of his sentence, all of his sentences were within the permissible statutory range, and there is apparently no societal consensus that a long sentence imposed on a defendant for serious crimes he committed at age thirteen offends evolving standards of decency).

The Sixth Circuit Court of Appeals has stated that "there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence." *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir.1991). Because petitioner's sentence was within the statutory limits for second degree murder, this Court will not set the sentence aside. *See Welch v. Burke,* 49 F.Supp.2d 992, 1009 (E.D.Mich.1999)(Cleland, J.). In a case in which a life sentence for an armed robbery which netted only $ 71.00 was challenged as disproportionate to the crime, the Fifth Circuit wrote that "the violent nature of the offense alone makes such an attack almost frivolous." *Brown v. Wainwright,* 576 F.2d 1148, 1149 (5th Cir.1978). Petitioner committed a callous and cold-blooded murder with no meaningful provocation and where no significant threat to his safety was present. Petitioner received less than a life sentence. Thus, he fails to show that there is an extreme disparity between his crime and his sentence. In any event, this Court concludes that petitioner has not shown that the Michigan courts' decisions affirming his sentence are contrary to, or unreasonable applications of, controlling United States Supreme Court precedent. Therefore, petitioner's challenge to his sentence is denied.

## IV. *Order*

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**