Mario Darnell **FRIDAY**, Petitioner–Appellant,

v.

Terry **PITCHER**, Warden, Respondent–Appellee.

No. 02–1564.

United States Court of Appeals, Sixth Circuit.

March 4, 2004.

Mario Friday, Carson City, MI, pro se.

Brad H. Beaver, Asst. Atty. General, Office of the Attorney General, Corrections Division, Lansing, MI, for Respondent–Appellee.

Before SUHRHEINRICH and CLAY, Circuit Judges; and GWIN, District Judge.*

## I.

PER CURIAM.

Petitioner–Appellant, Mario Darnell Friday, was convicted in Michigan state court of second-degree murder and possession of a firearm during the commission of a felony. After pursuing state court remedies, he sought federal habeas relief. *See* 28 U.S.C. § 2254. The district court denied his petition for a writ of habeas corpus, but granted a partial certificate of appealability as to four issues, which are presently before us.[1] For the following reasons, we

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Petitioner presented seven claims in his federal habeas petition. As noted, the district court denied the petition, but granted a partial certificate of appealability on his claims related to Petitioner's juvenile status. Petitioner filed a notice of appeal, which this Court construed as an application for a partial certificate of appealability on all claims other than those certified by the district court. *See* Fed. R.App. P. 22(b); *Kincade v. Sparkman,* 117 F.3d 949 (6th Cir.1997). By order

hold that Petitioner is not entitled to habeas relief.

### A.

Because the facts are not in dispute at this juncture, we take them directly from the district court's opinion:

Petitioner was convicted of murdering Frank Marzett on December 22, 1993. "The trial court found as fact at the conclusion of trial that defendant, without the slightest justification or legitimate concern for his own safety, shot the victim in the back five times with a semi-automatic pistol." *People v. Friday,* Michigan Court of Appeals Docket No. 182604 (July 29, 1997). The evidence established that petitioner and Mr. Marzett were members of a group which stole cars. The evidence also showed that petitioner and Mr. Marzett had a dispute over one of the cars members of the group may have stolen. Tony Ingram testified that petitioner had accused Mr. Marzett of taking one of his friend's cars and threatened to catch him.

Petitioner testified on his own behalf that, immediately before he shot the victim, the victim "turned around and went in his pocket on me." Trial Transcript ("Tr.") November 10, 1994 at 82. Petitioner admitted never seeing a gun on Mr. Marzett. Petitioner further testified that, although he did not know if the victim was pulling something out of his pocket or what the victim was doing, he (petitioner) "was in fear for my life." *Id.* at 83. Petitioner denied having intended to shoot Mr. Marzett. However, petitioner also testified that he shot Mr. Marzett in the back from a distance of about three to five feet. Mr. Marzett ran away when petitioner began shooting at him. but petitioner kept firing anyway.

Petitioner acknowledged that he fired several shots at Mr. Marzett. He was not sure how many. Five shell casings fired from the murder weapon were found at the scene. Petitioner also testified that he pulled the trigger only once, but the gun kept firing. Tr. November 10, 1994 at 86–88, 107–110. However, it was stipulated that the murder weapon was recovered and "test fired and found to be normally operable. And that it is a semiautomatic and not fully automatic." *Id.* at 61–62. In other words, it was stipulated that the trigger had to be pressed separately for every shot the gun fired. Pressing the trigger once and holding it down would only fire one shot. To fire five shots, the trigger had to be pressed five times after being released following each shot fired.

Forensic evidence showed that two .22 caliber bullets struck Mr. Marzett in the back of his upper right arm. A third .22 caliber bullet struck him in the left shoulder blade. This bullet passed through the shoulder area, passed through the left lung, aorta, trachea, and right lung, and then exited the body through the right upper chest area. It was this bullet which caused Mr. Marzett's death.

*Friday v. Pitcher,* 200 F.Supp.2d 725, 728–29 (E.D.Mich.2002) (footnote omitted).

### B.

Following a bench trial, petitioner was convicted of second-degree murder and felony firearm on November 14, 1994, and sentenced him to twenty-five to sixty-five

dated December 11, 2002, we denied the application for a partial certificate of appealability because Petitioner did not make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

years and two years imprisonment, respectively.

Petitioner appealed as a matter of right to the Michigan Court of Appeals, presenting a single issue:

> The sentence imposed is disproportionate to this eighteen year old high school student with no prior criminal record, especially because the sentencing court focused on the defendant's lifestyle and association rather than on the instant offense.

The Michigan Court of Appeals affirmed the conviction. The Michigan Court of Appeals ruled that:

> The trial court found as fact at the conclusion of trial that defendant, without the slightest justification or legitimate concern for his safety, shot the victim in the back five times with a semiautomatic pistol. The animosity between the defendant and the victim was related to a dispute over their activities. The sentence imposed is within the guideline range and defendant has failed to overcome the presumption, on this record, that such a sentence is proportionate to the offense and the offender. *People v. Eberhardt*, 205 Mich.App. 587, 518 N.W.2d 511 (1994).

*People v. Friday*, No. 182604, 1997 Mich. App. Lexis 884 (Mich. Ct.App. July 29, 1997) (unpublished). The Michigan Supreme Court denied Petitioner's application for leave to appeal.

Petitioner returned to the trial court and filed a motion for relief from judgment. He raised the following issues:

I. Petitioner's second degree murder conviction is supported by insufficient evidence.

II. Petitioner's arrest was illegal as was the failure to provide him counsel or a parent at the time of arrest.

III. The arrest warrant was invalid.

IV. Petitioner received ineffective assistance of appellate counsel in his appeal of right.

V. Petitioner received ineffective assistance of trial counsel.

On March 18, 1999, the trial court entered a brief order denying Petitioner's motion. The order states simply as follows:

> IT IS HEREBY ORDERED THAT defendant's motion is denied for the reason stated below:

> An evidentiary hearing was held wherein defendant admitted that he freely gave a statement to the police concerning the murder. The evidence at that hearing established that the defendant was brought to the police station by his mother. Further, the defendant made the statement within 45 minutes of arriving at the station. Therefore, no unlawful detention occurred. Evidence of malice was shown by multiple gun shots. One being to the back of the deceased [sic].

> It would have been a waste of time for appellate counsel to raise these issues. Appellate counsel raised the only meritorious issues.

> The defendant has failed to show good cause for failure to raise these issues in prior appeals. Nor has defendant established that he is entitled to relief request [sic].

*People v. Friday*, No. 94000918 (Wayne County Circuit Court. Mar. 18, 1999) (order).

Petitioner sought leave to appeal the trial court's order. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Friday*, No. 219419 (Mich.Ct. App., March 22, 2000) (order) (unpub-

lished). The Michigan Supreme Court also denied Petitioner's delayed application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Friday*, No. 463 Mich. 87 (Mich., Sept. 26, 2000) (order) (unpublished).

On March 27, 2001, Petitioner filed this petition for writ of habeas corpus presenting seven claims. The district court denied the petition, but granted Petitioner a partial certificate of appealability on four claims:

(1) that he [Petitioner] was denied due process and equal protection where he was interrogated by police without counsel or an adult present,

(2) that his constitutional rights were violated by application of Michigan's automatic juvenile waiver statute, M.C.L. § 600.606.

(3) his related claims of ineffective assistance of counsel regarding his alleged juvenile status at the time he committed his crimes and was interrogated, and

(4) his claim that his sentence is cruel and unusual punishment for a second degree murder committed by a juvenile.

These issues have been fully briefed by the parties.

### III.

We review a district court's legal conclusions in habeas actions *de novo* and its factual findings for clear error. *Dennis v. Mitchell*, 354 F.3d 511, 516–17 (6th Cir. 2003) (citing *Miller v. Francis*, 269 F.3d 609, 613 (6th Cir.2001)). If, however, the district court bases its decision on the state trial court transcript, and makes no findings of fact, we also review the district court's fact findings *de novo*. *Id.*

### IV.

This appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104–132, § 104, 110 Stat. 1214 ("AEDPA"). As relevant here, the AEDPA precludes habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court explained the meaning of "contrary to" and "unreasonable application" as used in § 2254(d)(1). A state court's legal decision is "contrary to" clearly established federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court's decisions on materially indistinguishable facts. *Id.* at 412–13. An "unreasonable application" occurs when the state court identified the correct legal principle from the Supreme Court but unreasonably applied that principle to the facts of the case before it. *Id.* at 413.

"[C]learly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The state court decision need not cite Supreme Court precedent. or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

## V.

It is arguable that Petitioner's challenge to his sentence was not procedurally defaulted. We will address this issue first.

■ Petitioner asserts that his sentence constitutes cruel and unusual punishment for a second-degree murder committed by a juvenile. Specifically, he contends that this sentence is "grossly disproportionate to the charged offense" of second-degree murder by a juvenile, and therefore in violation of the Eighth Amendment.

Although the Michigan Court of Appeals did not cite United States Supreme Court precedent, *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990). which it did cite, is based, in part, on United States Supreme Court precedent. That precedent, however, is not particularly applicable. In any event, we will examine the state court's decision under both clauses of § 2254(d)(1).

The Michigan Court of Appeals decision violates neither clause. The United States Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion). *See also Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Rather, it only forbids "extreme sentences" that are "grossly disproportionate" to the crime. *Harmelin*, 501 U.S. at 1001. Further, as the Supreme Court recently observed in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), "our precedents in this area have not been a model of clarity." *Id.* at 72 (AEDPA case). Nonetheless, "[t]hrough this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established'

under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id. See also Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) ("The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to non-capital sentences.'"). On the other hand, as the Supreme Court observed in *Lockyer*, its cases "exhibit a lack of clarity regarding what factors may indicate gross disproportionality." *Lockyer*, 538 U.S. at 72.

Petitioner focuses on his juvenile status as the factor that tips his sentence into a category of "grossly disproportionate." The aforementioned Supreme Court cases do not provide any direct support for this argument. *Cf. Lockyer*, 528 U.S. at 63 (holding that state court decision affirming the petitioner's two consecutive terms of twenty-five years to life in prison for a "third strike" conviction was not "contrary to" or an "unreasonable application" of "clearly established" gross disproportionality principles set forth by *Rummel, Solem*, and *Harmelin*); *Harmelin*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (holding that life imprisonment without possibility of parole for possessing cocaine did not raise an inference of gross proportionality even though the defendant was a first-time offender); *Solem*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (holding that a life sentence without possibility of parole for a seventh nonviolent felony violated the Eighth Amendment); *Rummel*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (holding life in prison with a possibility of parole for a three-time offender did not violate the Eighth Amendment). Here. Petitioner, although a first-time offender, committed a violent felony without justification. Furthermore, because he received a lesser offense of second-degree murder, parole is a possibility. In sum, it

cannot be said that the Michigan Court of Appeals decision is contrary to, or an unreasonable application of, clearly established federal law. The district court did not err in denying the petition for writ of habeas corpus on this basis.

## VI.

The district court determined that Petitioner's remaining claims were procedurally defaulted. The state trial court held that Petitioner had not established good cause for failing to raise them during his prior appeal, and both state appellate courts cited M.C.R. 6.508(D) in denying Petitioner relief. These rulings present a sufficient explanation that the ruling was based on procedural default under Michigan law. *See Burroughs v. Makowski*, 282 F.3d 410, 413–14 (6th Cir.2002), *modified on reh'g*, 35 Fed.Appx. 402 (6th Cir.2002) (per curiam); *Simpson v. Jones*, 238 F.3d 399, 407–08 (6th Cir.2000).

Procedural default may be excused, however, if the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or demonstrate that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Ineffective assistance of counsel may constitute "cause" for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, an ineffective assistance of counsel claim asserted as "cause" to excuse the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Jacobs v. Mohr*, 265 F.3d 407, 414 (6th Cir.2001).

■ Here, Petitioner points to his appellate counsel's failure to raise his habeas claims as constituting cause. Even if we assume that Petitioner's ineffective assistance of appellate counsel claim was not defaulted because he raised it in his motion for relief from judgment in the trial court, this does not constitute cause for the procedural default of his other claims; Petitioner cannot demonstrate that appellate counsel was constitutionally ineffective for failing to raise these claims because each of the defaulted claims lacks merit. *See Edwards*, 529 U.S. at 451; *Buell v. Mitchell*, 274 F.3d 337, 351–52 (6th Cir.2001).

■ First, Petitioner claims that he was denied due process and equal protection when police interrogated him without counsel or an adult present. However, Petitioner has not met the standard set forth in the relevant Supreme Court precedent. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). There, the Supreme Court announced a "totality of the circumstances" test for evaluating whether a juvenile knowingly and intelligently waived his *Miranda* rights. *See id.* at 725. Under this approach, a court must "inquire into all the circumstances surrounding the interrogation," including "evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequence of waiving those rights." *Id. See also Miranda v. Arizona*, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (stating that the privilege against self-incrimination protects individuals from "informal compulsion exerted by law-enforcement officers during in-custody questioning").

Here, the state trial court, in its order denying the motion for relief from judgment stated: "An evidentiary hearing was held wherein defendant admitted that he freely gave a statement to the police concerning the murder." The state trial court also found that Petitioner's mother

brought him to the police station where he gave his statement within forty-five minutes of arriving at the station. Further, as the district court found, the evidence showed that Petitioner was at least sixteen years old at the time of his offense and interrogation, of normal intelligence, and he was informed of his *Miranda* rights, and understood them. There was no proof of physical or mental abuse during the interrogation. In short, as the district court held, there was no evidence that Petitioner's statement was involuntary under the totality of the circumstances. Petitioner's claim would not have prevailed under a *de novo* standard of review, let alone the more deferential standard of the AEDPA. *Compare Taylor v. Withrow,* 288 F.3d 846, 850 (6th Cir.) (noting that the AEDPA "sets a higher hurdle for those seeking habeas than before"); *cert. denied,* 537 U.S. 1007, 123 S.Ct. 490, 154 L.Ed.2d 406 (2002), *with McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir.1996) (pre-AEDPA case; stating that *de novo* standard of review applies to a district court's refusal to grant a writ of habeas corpus).

■ Petitioner also claims that his constitutional rights were violated by application of Michigan's automatic juvenile waiver statute, Mich. Comp. Laws § 600.606. The statute specifies that when a juvenile is charged with certain serious crimes—such as the one in this cases—the prosecutor has discretion to charge the defendant as an adult. However, Petitioner fails to cite any clearly established Federal law in support of his argument. This claim is therefore without merit.

Lastly, Petitioner contends that trial and appellate counsel were ineffective for failing to raise Petitioner's alleged juvenile status at the time he committed his crimes and was interrogated. For the reasons just discussed, this claim lacks merit as well.

In short, Petitioner's "appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points." *Buell,* 274 F.3d at 352 (citing *Coleman v. Mitchell,* 244 F.3d 533, 541 (6th Cir.2001)). Because Petitioner has failed to establish a meritorious issue, there can be no claim for ineffective assistance of appellate counsel.

Finally, Petitioner has not shown that a substantial miscarriage of justice will occur if the petition is denied or that he is actually innocent of the crime. *See Schlup v. Delo,* 513 U.S. 298, 314–15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

## VII.

For the foregoing reasons, the judgment of the district court denying Petitioner's request for a writ of habeas corpus is **AFFIRMED.**